# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:16-cv-01917-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF No. 16, 17, 18) |

## I.

## INTRODUCTION

Plaintiff Donald Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from obesity, diabetes mellitus, asthma, disorders of the muscle, ligament and fascia with peripheral neuropathy. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 10.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 1, 2013. (AR 73.) Plaintiff's applications were initially denied on December 17, 2013, and denied upon reconsideration on February 20, 2014. (AR 86-90, 94-97.) Plaintiff requested and received a hearing before Administrative Law Judge Daniel G. Heely ("the ALJ"). Plaintiff appeared for a hearing on February 23, 2015. (AR 37-63.) On April 17, 2015, the ALJ found that Plaintiff was not disabled. (AR 21-32.) The Appeals Council denied Plaintiff's request for review on October 19, 2016. (AR 1-4.)

## A. Hearing Testimony

Plaintiff appeared with counsel and testified at the February 23, 2015 hearing. (AR 41-58.) Plaintiff is 5 foot 11 inches tall and weighs 216 pounds. (AR 42.) Plaintiff lives with his brother. (AR 46.) His brother does not work because he has health problems but is not on disability yet. (AR 46.) Plaintiff and his brother share equally the work at home. (AR 47.) Every once in a while when Plaintiff is really hurting his brother will let the dog out to use the restroom. (AR 47.) Plaintiff's brother has two dogs and Plaintiff has a Jack Russell Terrier. (AR 47.) Plaintiff's brother will also go and get water in five gallon jugs and pick it up for Plaintiff because he cannot pick it up. (AR 47.)

Plaintiff has never had a driver's license and has never driven. (AR 47-48.) His brother takes him when he needs to go somewhere or he will take a cab. (AR 48.) Plaintiff has taken the bus a couple of times. (AR 48.) Plaintiff does his own microwave cooking, laundry, and some housework, like vacuuming the carpet. (AR 49.) Plaintiff has difficulty with the back and forth motion of vacuuming. (AR 49.) Plaintiff has San Joaquin health insurance and does not pay anything. (AR 49-50.)

Plaintiff and his brother will go out to eat on occasion. (AR 50.) He watches television in the evening. (AR 50.) Plaintiff watches about 8 hours of television a day. (AR 50.) He likes documentaries like NOVA and those on the PBS channel. (AR 51.) Plaintiff uses the Internet to talk to friends. (AR 51.) He uses instant messaging and Facebook. (AR 51.) He also plays

checkers online by himself or against the computer. (AR 51.) Plaintiff collects stamps, coins, keychains, and buttons. (AR 51.) He purchases the items when he sees them in the store. (AR 52.) The furthest Plaintiff has travelled since he moved was to visit his sister in Pleasanton. (AR 53.) She took Plaintiff for Christmas and Thanksgiving in 2013. (AR 52.) Plaintiff just went for the day and did not stay overnight. (AR 53.)

Plaintiff smokes about a half a pack of cigarettes on a normal day. (AR 43.) He used to smoke a pack a day but has cut back. (AR 43.) Plaintiff has not been diagnosed with COPD, emphysema or asthma. (AR 43.) Plaintiff does not drink alcohol or use illegal drugs or medical marijuana. (AR 43.) Plaintiff has never had any surgeries on parts of his body related to his ability to work. (AR 43.)

Plaintiff has not worked since February 1, 2013. (AR 41.) Plaintiff does not think that he could do much work because he has a lot of pain. (AR 42.) Plaintiff has arthritis in his neck, and numbness in his toes. (AR 42.) Plaintiff's hands sometimes swell and he has a hard time gripping. (AR 44.) His knuckles have arthritis and will feel tight and hurt. (AR 44-45.) Plaintiff has difficulty sleeping because his legs, feet, and toes give him a lot of pain. (AR 53.) The toes on his left foot will curl up and cause pain at night. (AR 53.) He has diabetes in his big toe on his left foot and severe arthritis. (AR 52.) Plaintiff's toe will hurt so bad that he will have to take a two-hour nap during the day to feel better. (AR 53.)

Plaintiff will take a two hour nap because he is fatigued from not sleeping at night. (AR 55.) He has more energy when he wakes up from his naps. (AR 55-56.) The pain is worse on cold days. (AR 56.) The pain is constant and never lets up. (AR 56.) Plaintiff has pain in his left shoulder when he picks up something heavy. (AR 56.) He cannot put his hands above his shoulder because it hurts really bad. (AR 56.) Plaintiff is able to pick something up from a table in front of him but he still gets pain in his shoulders. (AR 56-57.) He is able to reach in front of him. (AR 57.) Plaintiff has pain in his neck, back, feet, and legs. (AR 57.) When he puts on a jacket his left shoulder causes problems. (AR 57.) He has pain around the neck bone and it will feel so tight that he gets disoriented. (AR 58.) He almost fell twice when he was working. (AR 58.)

Plaintiff has diabetes and takes pills for it. (AR 42.) He checks his blood sugar every day. (AR 42.) His blood sugar on the morning of the hearing was 252. (AR 42.) Plaintiff also takes blood pressure medication that makes him feel a little light headed when he first takes it, but he feels much better once it is in his system. (AR 45.) His blood pressure is controlled on the medication. (AR 45.) Plaintiff does have slight asthma, not really full blown, but every once in a while when he gets sinus problems his chest will wheeze a little bit. (AR 45.) He uses an inhaler. (AR 45.)

Plaintiff can stand for ten minutes at the most and then has to sit down to take the pressure off of his legs, feet, and hips. (AR 54.) Some of the pain is from his diabetes and he also is getting arthritis in his toes. (AR 54.) Plaintiff has numbness in his toes and it is going to the top of his foot. (AR 54.) Plaintiff's doctor had him get compression stockings and they do help a little bit. (AR 55.) He wears them when he sleeps. (AR 55.)

A vocational expert ("VE"), Malcolm J. Brodzinsky, also testified at the hearing. (AR 58-62.)

**B.    ALJ Findings**

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.
- Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of February 1, 2013.
- Plaintiff has the following severe impairments: obesity, diabetes mellitus, asthma, disorders of the muscle, ligament and fascia with peripheral neuropathy.
- Plaintiff does not have an impairment or combination of impairments that met or medically equal the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of medium work. Specifically, Plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours out of an 8 hour workday with regular breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; never work around hazards, like moving dangerous machinery or unprotected heights; cannot work

around concentrated fumes, odors, dust, gases, poor ventilation or other environmental irritants; and cannot operate motor vehicles.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on July 25, 1961, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act from February 1, 2013, through the date of this decision.

(AR 26-32.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not

disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

/ / /

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ's RFC finding is based on insubstantial evidence and legal error and was not properly based on the objective evidence and Plaintiff's complaints. Plaintiff also argues that the appeal's counsel failed to give specific and legitimate reasons to reject Dr. Lee's opinion. Defendant counters that the ALJ properly evaluated and interpreted the conflicting medical evidence, provided proper reasons to reject Plaintiff's credibility, the step 5 finding is supported by substantial evidence in the record, and the evidence supported to the appeals counsel does not show a reasonable probability that it would erode the substantial evidence supporting the ALJ's decision. Plaintiff replies that the ALJ's findings are not supported by substantial evidence in the record and were based on unreasonable interpretations of the evidence. Plaintiff argues that Dr. Lee's opinion should be credited as true and this action should be remanded for payment of benefits.

### A. The Residual Functional Capacity Assessment is Supported by Substantial Evidence in the Record

Plaintiff concedes that there was very little medical evidence in the record reviewed by the state physicians. (Pl.'s Opening Brief 9,[2] ECF No. 16.) Plaintiff's treating provider prior to 2013 did not provide medical records. Therefore, the record was limited to records beginning October 2013. Plaintiff argues that the ALJ erred by reviewing the x-rays and MRI scans of Plaintiff's spine and finding the medical evidence to be benign.[3]

If the claimant has established that he has a severe impairment but has not demonstrated that his impairment or combination of impairments meets or equals a listed impairment, the ALJ goes to step four to determine if the claimant possesses the RFC to perform his or her past relevant work. Stout, 454 F.3d at 1052. A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] As Plaintiff is only challenging the ALJ's RFC findings as they relate to his spine, the Court shall limit the discussion to those portions of the record relevant to this issue.

7

evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).

The ALJ considered that Plaintiff received treatment for his diabetes and hypertension which were managed by conservative treatment. (AR 28-29.) In October 2013, Plaintiff reported no back pain or joint pain, and pain was noted to be 0/10. (AR 28-29, 424.) Plaintiff had a normal gait and no edema. (AR 28, 424.) Plaintiff was to continue his conservative treatment which was prescription medication and increased exercise. (AR 28, 425.)

In November 2013, Plaintiff continued to report no back pain or joint pain, with normal examination. (AR 238.) Plaintiff was also seen for a foot examination which confirmed some loss of sensation and varicosity of the ankles. (AR 28, 241.)

Plaintiff had an internal medicine consultative evaluation by Dr. Rios on November 21, 2013. (AR 29, 242-246.) Dr. Rios noted that no medical records were available for review, but Plaintiff complained of chronic back pain, diabetes, and asthma. (AR 29, 242.) Plaintiff admitted that he was not taking any medication for pain and was smoking 30 packs of cigarettes a year by history. (AR 29, 242.) Plaintiff reported some peripheral neuropathy, but no significant visual acuity. (AR 29, 242.) Physical examination was largely unremarkable. (AR 29, 243-244.) Plaintiff was noted to walk around the examination room with ease. (AR 29, 243.) Station and tandem gait were normal. (AR 29, 244.) Romberg was negative and Plaintiff required no assistive devices. (AR 29, 244.) Ranges of motion were within normal limits and straight leg raise was negative. (AR 29, 244.) Examination of the neck revealed tenderness along the left paracervical region and upper trapezius region. (AR 29, 245.) Spurling's test was negative for nerve root irritation. (AR 29, 245.) There was no wasting of the upper extremities and reflexes of the biceps and triceps were normal and symmetric at 2+. (AR 29, 245.) Examination of the lower back revealed no findings of nerve root irritation on provocative maneuvers. (AR 29, 245.) No limitation of range of motion was observed. (AR 29, 245.)

Plaintiff had motor strength of 5/5 throughout the upper and lower extremities. (AR 29,

245.) Grip strength was normal at 5/5. (AR 29, 245.) Plaintiff had normal muscle bulk and tone without any atrophy, spasms, or fasciculation. (AR 29, 245.) Light touch and pinprick were intact throughout the upper and lower extremities. (AR 29, 245.) Deep tendon reflexes were 2+ in the bilateral upper and lower extremities. (AR 29, 245.)

Dr. Rios opined that Plaintiff had no exertional limitations, but would have workplace environmental limitations. (AR 29, 246.) The ALJ gave this opinion significant weight because it was consistent with the medical evidence of record and Plaintiff's acknowledged daily activities of daily living. (AR 29.) However, the ALJ found that additional limitations were warranted based on the totality of the medical evidence which Dr. Rios did not have the benefit of reviewing, and Plaintiff's subjective complaints. (AR 29.)

The ALJ found that review of the subsequent medical evidence did not establish a significant deterioration of Plaintiff's overall condition. (AR 29.) For example, treatment notes from February 2014 show that Plaintiff was seen for sinusitis but review of the symptoms were otherwise normal, physical examination was normal, and there were no musculoskeletal deficits noted. (AR 29, 250-251.)

In September 2014, Plaintiff continued to receive care for sinusitis, but he was in no apparent distress, no musculoskeletal deficits were noted, and he ambulated without assistance. (AR 30, 257.)

The first findings regarding back pain in Plaintiff's treatment notes are on December 5, 2014. (AR 288-290.) Plaintiff reported that he was in no pain, but had back pain that was relieved by over the counter medications, naproxen, and physical therapy. (AR 288.) Examination of the cervical spine, thoracic spine, and lumber spine showed tenderness with mildly reduced range of motion. (AR 290.) Plaintiff was prescribed naproxen and referred to physical therapy. (AR 290.)

On December 8, 2014, Plaintiff an x-ray of the lumbar spine. (AR 284.) The x-ray revealed minimal wedging deformity at L1, and moderate multilevel degenerative spondylosis. (AR 284.) Plaintiff had an x-ray of the cervical spine that showed moderate to severe multilevel degenerative spondylosis; osseous foraminal stenosis bilaterally at multiple levels most

prominent on left at C5-6; and 2 x 5 cm well circumscribed lucency in the left mandible. (AR 285.) Plaintiff had an x-ray of his thoracic spine that showed mild multilevel degenerative spondylosis and bridging osteophytosis. (AR 287.) Plaintiff was seen this same day and found to have normal strength in the bilateral lower extremities. (AR 281.)

On February 4, 2015, Plaintiff had an MRI of the lumbar spine. (AR 276-277.) Plaintiff reported that he was having back pain that was shooting down both legs with numbness. (AR 276.) The MRI showed disc and osteophytes at T12-L1, L3-4, L4-5 and then most pronounced disc protrusion at L5-S; only minimal narrowing of the spinal canal at T12, L1-4, L4-5, and even at L5-S1. (AR 276.) There was minimal neural foraminal encroachment at L2-3, mild at L3-4, L4-5, mild left and mild to moderate right at L5-S1 just abutting the nerve root on the right. (AR 276.) There was mild to moderate degenerative changes in the facet joints throughout the lumbar spine as described. (AR 276.)

Plaintiff also had a MRI of the cervical spine the same day. (AR 278-279.) The MRI revealed "slight reversal of the curvature of the cervical spine with degenerative changes throughout the cervical spine minimal to moderate disc bulging from C3 to T1. This leads to neural foraminal encroachment minimal at C3-4, C4-5, minimal to mild C5-6 and mild at C6-7 where it does abut the cord and there is no fluid around the cord." AR 279.) There was minimal neural foraminal encroachment to the left at C2-3, mild bilateral at C3-4, mild right at C4-5, marked left, moderate right at C5-6, moderate left and mild right at C6-7 and mild left at C7-T1. (AR 279.)

On February 10, 2015, Plaintiff was seen by Dr. Lee for back pain, musculoskeletal pain, neck pain and MRI results. (AR 272.) Plaintiff complained of back pain with a severity of 10 in his upper back and neck. (AR 272.) Plaintiff also complained of musculoskeletal pain with a severity of 10 that radiates to his legs bilaterally. (AR 272.) Plaintiff stated that he has pain from his hips all the way to his feet feeling like needles and numbness. (AR 272.) Plaintiff further complained of bilateral lateral neck, bilateral posterior neck, bilateral shoulder and bilateral upper back pain. (AR 272.) Dr. Lee noted that the MRI of the cervical and lumbar spine showed degenerative changes. (AR 272.) Plaintiff had a normal examination except for a

tender cervical and lumbar spine with a moderately reduced range of motion. (AR 274.) Dr. Lee diagnosed Plaintiff with cervical and lumbar degenerative disc disease, and fibromyalgia. (AR 274.)

The ALJ noted that the medical record from February 2015 confirm that Plaintiff had some cervical and lumbar degenerative disc disease, but Plaintiff declined muscle relaxant and opioid analgesics and was to proceed with physical therapy and pain management. (AR 30, 274.) On March 2015, Plaintiff reported sinus and respiratory complaint, and had a normal physical examination. (AR 30, 266-268.)

Plaintiff argues that the ALJ improperly evaluated the x-rays and MRIs to determine that his condition was benign, however the ALJ considered that while Plaintiff's record established that he had some cervical and lumbar degenerative disc disease, he refused muscle relaxants and opioid analgesics and was treated conservatively with physical therapy and pain management. Further, the ALJ considered that on his subsequent visit in March of 2015, Plaintiff did not complain of back pain and had a normal physical examination. Plaintiff argues that the majority of his treatment has been focused on his diabetes, neuropathy, and recurring sinusitis which explains the lack of medical evidence regarding his back, but the fact that the record is largely devoid of complaints or treatment regarding Plaintiff's back problems is substantial evidence to support the ALJ's findings.

Finally, at the February 23, 2015 hearing, the ALJ questioned Plaintiff on why he was unable to work. Plaintiff went into detail about pain from his arthritis in his neck, pain in his left shoulder, difficulty gripping due to arthritis in his hands, numbness in his toes, and pain in his legs, feet, and toes. (AR 42-45, 53-58.) The only testimony regarding Plaintiff's back was in response to the ALJ's question, "Are there any other major health issues you're having we haven't covered with you can think of right now, Mr. Jackson." (AR 57.) Plaintiff responded, "No, just that I'm in my neck, back and my feet and my legs, that's about it." (AR 57.)

The Court finds that substantial evidence supports the ALJ's residual functional capacity assessment as to Plaintiff's spinal impairment.

**B.     Dr. Lee's Opinion**

After the ALJ issued his opinion finding Plaintiff to not be disabled, Plaintiff submitted the opinion of Dr. Lee to the Appeals Counsel. Plaintiff argues that the Appeals Counsel erred by failing to provide specific and legitimate reasons to reject the opinion. Defendant responds that the Court does not have the jurisdiction to review the reasons given to reject Dr. Lee's opinion. Defendant contends that while the Court should consider the evidence submitted to the Appeals Counsel in this appeal in determining if the decision is supported by substantial evidence in the record, there is no reasonable possibility that this conclusory opinion would change the ALJ's decision. Plaintiff replies that Dr. Lee's opinion demonstrates that the ALJ's opinion is not based on substantial evidence.

The parties disagree on the standard to be applied to the new evidence submitted to the Appeals Counsel after the ALJ issued his decision finding Plaintiff was not disabled. Here, the evidence was incorporated into the record and considered by the Appeals Counsel. The Social Security regulations provide that the Appeal's Council will review a case if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Where a claimant submits additional material that the Appeals Council addressed in the context of denying the claimant's request for review, the district court must consider the additional material in deciding the claimant's Social Security appeal. Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012). Therefore, the Court considers whether there is a reasonable possibility that Dr. Lee's opinion would change the outcome of the decision.

On June 30, 2015, Dr. Lee completed a questionnaire. (AR 434-435.) Dr. Lee opined that Plaintiff's medical problems prevented him from performing fulltime work. (AR 434.) Plaintiff was impaired due to cervical and lumbar degenerative disc disease, bilateral hand arthritis, bilateral arthralgia, and fibromyalgia. (AR 434.) Dr. Lee's opinion was based on cervical and lumbar spine tenderness and reduced range of motion, joint pain and swelling in both hands, and patella tenderness in both knees. (AR 434.) Plaintiff was able to sit 2 to 3 hours

in an 8 hour workday and stand/walk 2-3 hours in an 8 hour workday. (AR 434.) Plaintiff was required to lie down or elevate his legs 1 to 2 hours in an 8 hour workday. (AR 434.) Plaintiff had additional limitations due to difficulty with hand movements. (AR 434.) Dr. Lee opined that Plaintiff had hand arthritis and possibly carpel tunnel syndrome or other neuropathy. (AR 434.) This finding was based on an x-ray showing osteoarthritis of the DIP joints. (AR 434.) Plaintiff was able to lift less than 5 pounds frequently, 5 pounds occasionally, and could reach/grasp, handle, feel, push/pull/ and perform fine finger manipulation 2 to 3 hours in an 8 hour workday. (AR 435.) Plaintiff was able to perform these activities for less than 1 minute without resting the hand. (AR 435.) Dr. Lee opined that Plaintiff had been disabled to this degree since July 2014. (AR 435.)

Plaintiff also includes two additional treatment records. On April 1, 2015, Plaintiff was seen for follow up on his sinus symptoms. (AR 367.) Plaintiff had a normal examination, other than some excess cerumen in the ear canals. (AR 369.) Plaintiff was seen again on April 9, 2015, for diabetes and a cough. (AR 362.) Plaintiff had a normal examination and was diagnosed with diabetes with neurological manifestations type ii; microalbuminuria, essential hypertension; and chronic sinusitis. (AR 365.)

Significantly, all the evidence that Dr. Lee relies on in his June 30, 2015 opinion was included in the record and considered by the ALJ in making the determination that Plaintiff was not disabled. While Dr. Lee opines that Plaintiff has functional limitations due to his back impairments that existed as of July 2014, other than Dr. Rios examination on November 21, 2013, the treatment record that is devoid of any treatment or spinal findings prior to December 2014, or after February 2015. Further, Dr. Rios performed a comprehensive physical examination, and considering Plaintiff's complaints of chronic severe back pain, opined that Plaintiff had no functional limitations. The records from Plaintiff's treating physicians only show findings regarding Plaintiff's back on December 5, 2014, and February 10, 2015. Although Plaintiff continued to receive medical treatment after February 2015, the record does not document Plaintiff's complaints of back pain or any findings as to Plaintiff's back. Dr. Lee's opinion that Plaintiff had functional limitations due to his back impairment since July 2014 is not

13

consistent with the medical evidence in the record.

Further, Dr. Lee opined that Plaintiff had additional limitations due to difficulty with hand movements. (AR 434.) Dr. Lee opined that Plaintiff had hand arthritis and possibly carpel tunnel syndrome or other neuropathy. (AR 434.) This finding was based on an x-ray showing osteoarthritis of the DIP joints. (AR 434.) Plaintiff was able to lift less than 5 pounds frequently, 5 pounds occasionally, and could reach/grasp, handle, feel, push/pull/ and perform fine finger manipulation 2 to 3 hours in an 8 hour workday. (AR 435.) Plaintiff was able to perform these activities for less than 1 minute without resting the hand. (AR 435.) Dr. Lee opined that Plaintiff had been disabled to this degree since July 2014. (AR 435.)

Review of the medical record demonstrates that there are no objective findings to support the hand limitations opined by Dr. Lee. There is no x-ray of Plaintiff's hands contained in the medical record. Dr. Lee also opined that Plaintiff had joint pain and swelling in both hands, but the record is devoid of such findings. Plaintiff's medical records consistently show findings of no edema, normal range of motion and strength in the extremities, or reflect no findings. (AR 238, 244, 245, 251, 268, 274, 300, 312, 316, 319, 325, 331, 335, 365, 369, 373.) Specifically, no edema in the extremities is noted on August 14, 2014; September 9, 2014; April 1, 2015; and April 9, 2015. (AR 331, 335, 365, 369.) On September 20, 2014, the record reflects that extremities were within normal limits. (AR 325.) On October 4, 2014, the record notes overview of all four extremities is normal. (AR 316.) Dr. Lee found no edema of the extremities and the record reflects no hand findings on December 5, 2014, and February 10, 2015. (AR 274, 290.) The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. Accordingly, the Court finds that there is no reasonable probability that the additional evidence would change the outcome of the decision.

**C.     Step Five**

Plaintiff argues that due to errors in determining his RFC, the ALJ did not carry his burden at Step Five to show that there are a significant number of jobs that he can perform. Defendant responds that the RFC finding and the hypothetical that was presented to the

vocational expert contained the only limitations that were supported by substantial evidence in the record.

At Step Five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. § 416.920(g). At this step, the ALJ considers potential occupations that the claimant may be able to perform. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 416.966.

The ALJ relies on the DOT, which is the Social Security Administrations "primary source of reliable job information" regarding jobs that exist in the national economy, in making this determination. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.1990). "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of the worker for satisfactory job performance.'" Zavalin, 778 F.3d at 845 (quoting DOT, App. C, 1991 WL 688702 (4th ed.1991)).

Along with the DOT, the ALJ will rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on his residual functional capacity. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir.2009); 20 C.F.R. § 416.966(e). In order for the VE's testimony to be considered reliable, "the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956.

Here, the ALJ found that Plaintiff retained the functional capacity to perform a full range of medium work. Specifically, Plaintiff can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours out of an 8 hour workday with regular breaks; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; never work around hazards, like moving dangerous machinery or unprotected heights; cannot work around concentrated fumes, odors, dust, gases, poor ventilation or other environmental irritants; and cannot operate motor vehicles. (AR 27.) At the February 23, 2015 hearing, the ALJ presented a

hypothetical of an individual of Plaintiff's age, educational background, and work experience, who could sit, stand, walk 6 out of 8 hours each with normal breaks; lift and or carry 50 pounds occasionally and 25 pounds frequently; never climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs; could never work around hazards like moving, dangerous machinery or unprotected heights; could not work around concentrated fumes, odors, dust, gases, poor ventilation, or other environmental irritants,; and could not operate motor vehicles. (AR 60.)

The hypothetical presented to the VE was consistent with the ALJ's residual functional capacity assessment of Plaintiff. The VE opined that this individual would be able to perform jobs that were available in significant numbers in the national economy. (AR 61.) The ALJ did not err at Step Five in determining that there were jobs available in significant numbers in the national economy that Plaintiff would be able to perform.

**D.  Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in finding Plaintiff's subjective complaints to be not credible.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v.

Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's credibility was reduced by several factors.

1. Daily activities

First, the ALJ found that Plaintiff was engaged in a somewhat normal level of daily activity and interaction. (AR 28.) Plaintiff admitted during the consultative examination that he was independent in his activities of daily living and is able to drive a vehicle. (AR 28.) The ALJ found that while Plaintiff' activities of daily living are somewhat limited, some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. (AR 28.)

There are two grounds to use daily activities for an adverse credibility finding. Orn, 495 F.3d at 639. First, daily activities can form the basis of an adverse credibility determination if

the claimant's activity contradicts his testimony. Id. Secondly, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639.

Here, while the ALJ stated that some of Plaintiff's daily activities were the same as those activities necessary for obtaining and maintaining employment, the ALJ did not identify those activities or how they were transferable to the work setting. The ALJ did not establish that Plaintiff's daily activities are transferable to a work setting.

"[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." Orn, 495 F.3d at 639 (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). While the ALJ make a conclusory statement that Plaintiff's daily activities were inconsistent with the presence of a debilitating or incapacitating condition, the ALJ did not identify any such activities or how they are inconsistent with Plaintiff's testimony.

Plaintiff's daily activities are not a clear and convincing reason to reject his credibility. The Commissioner concedes that the ALJ's reliance on daily activities was error as he did not specifically identify what the activities were, how they translated into the ability to work, or how they were in excess of Plaintiff's stated limitations. However, the Commissioner argues that the error was harmless as the ALJ provided other clear and convincing reasons for the adverse credibility finding.

2. Conservative Treatment

The ALJ found that Plaintiff's credibility regarding the severity of his symptoms and limitations was diminished because he received routine conservative treatment for his impairments. (AR 28.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted that Plaintiff received only conservative treatment for his diabetes, high

blood pressure, and peripheral neuropathy. (AR 29.) Further, while Plaintiff was diagnosed with cervical and lumbar degenerative disc disease, he declined muscle relaxants and opioid treatment and was treated with physical therapy and pain management. (AR 30.)

Review of the record demonstrates that substantial evidence supports that ALJ's finding that Plaintiff receiving only routine and conservative treatment for his impairments. (AR 239, 241, 252, 262, 269, 271, 274, 282, 290, 301, 307, 312, 314, 317, 320, 325, 332, 335, 365, 369, 425.) Further, despite Plaintiff's complaints of severe back pain of 10 out of 10, he declined opioid narcotics and muscle relaxants. (AR 274.)

### 3. Objective Medical Evidence

The ALJ also considered that objective medical clinical and diagnostic findings do not support the level of impairment alleged. The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ properly found that the objective medical evidence did not support Plaintiff's testimony regarding his symptoms and limitations.

### 4. The ALJ Provided Clear and Convincing Reasons for the Credibility Finding

The ALJ erred in finding that Plaintiff's daily activities warranted an adverse credibility finding. However any such error is harmless as the ALJ provided other clear and convincing reasons for the adverse credibility finding. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011). Accordingly, the Court finds that any error in the daily activities finding is harmless and the ALJ provided clear and convincing reasons that are supported by substantial evidence in the record to find Plaintiff's testimony not credible.

19

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in considering Plaintiff's spinal limitations, finding Plaintiff's testimony not credible, and there is no reasonable probability that Dr. Lee's June 2015 report would change the outcome of the decision.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Donald Jackson. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **November 27, 2017**

UNITED STATES MAGISTRATE JUDGE